# FOWLER *vs.* BROOKS.

If a surety, with knowledge of the fact that an agreement for an extension of time has been made between the creditor and the principal, make a new promise to pay the debt, he cannot afterwards avail himself of the agreement, as a discharge of his liability, notwithstanding there was no new consideration for his promise.

But the mere fact that the surety takes security from the principal, to indemnify him against his liability, is not a renewal of his promise.

Declarations by a surety to third persons, that he "expects to pay," or " may have to pay the debt," will not operate of themselves as a new promise; but they may be submitted to the jury, as evidence having a tendency to show a new promise, or an assent at the time to the agreement for delay.

Fowler *v.* Brooks.

It is not necessary, in order to constitute a binding contract for an extension of time, that there should be a contract to pay usurious interest. The ordinary legal interest, which will be received upon a note payable with interest, provided the payment be delayed, is a sufficient consideration, if a binding agreement be made for delay which secures to the creditor the interest during the term.

An application for delay, for a time, by the principal, and a declaration by the creditor that the matter may rest, or that he will not insist on immediate payment, or any other similar declaration, even specifying a time, does not constitute a binding agreement for delay. Notwithstanding a transaction of that character, the debtor may pay, and the creditor collect, at any time.

But an agreement that the creditor will delay the collection for a certain period, in consideration of which the debtor agrees that he will pay the interest for that period, constitutes a binding agreement, which will operate to discharge the surety.

ASSUMPSIT on a promissory note, dated April 20, 1836, for $300, payable to Thomas H. Kimball, or order, by the first of January, then next, and indorsed by Kimball to the plaintiff.

Plea, the general issue.

The note in suit was signed by Benjamin Fay and the defendant. Fay was defaulted. It was admitted that Kimball, the payee of the note, was the party in interest in maintaining this suit.

The defence set up was that Fay was the principal upon the note, and that the defendant was surety merely; that this was known to Kimball, and that after the note fell due a new agreement was made betwixt Kimball and Fay, by which a further extension was made of one year for payment of the note, without the knowledge or subsequent assent of the defendant, and that by means of such agreement the defendant was discharged.

The plaintiff contended that the defendant was not a surety, but that the loan obtained on the note was in part for his benefit; and evidence was offered tending to show this fact. On the other hand, there was evidence tending to show that the defendant was surety, and that this fact was known to Kimball. An agreement to extend the time of payment of the note for one year, made by Kimball and Fay, was shown,

which agreement was made, as was contended, without the defendant's knowledge.

The plaintiff offered evidence tending to show that after the agreement for delay was made, and with a full knowledge of such agreement, the defendant assented to the same, and promised to pay the note. This evidence consisted of various declarations of the defendant, made to persons not interested in the note, that "he expected to pay the note," that "he should be obliged to pay the note," or "might have to pay it." There was evidence also of conversations betwixt the defendant and Kimball, in which the defendant refused payment, on account of the extension. It further appeared, that subsequent to such extension, and either the last of January or first of February, 1838, Fay let the defendant have two colts and two notes against one Charles Whitney, amounting in all to $106, for which the defendant gave a receipt, engaging to pay that amount on the note now in suit. Afterwards the receipt was given up, and a new receipt was given by the defendant to Fay, to account for the property, on his liabilities as surety for Fay. It appeared that in addition to the defendant's liability on the note in suit, he was also liable as surety for Fay on a note due the Lancaster Bank, and a note due to I. Goodall. The defendant also received Fay's store-books, on which $50 or $60 were collected, which sum was also to be applied towards the defendant's liabilities.

The court instructed the jury that the evidence tended to show a new promise by the defendant to pay the note in suit, or that Fay acted as the agent of the defendant, or with his knowledge and assent, in procuring the extension, but was not conclusive evidence on these points; that he might deny his liability, and yet wish to obtain security if he should be mistaken in this respect; that the whole evidence was matter for their consideration, and they might or might not find from it a new promise, or evidence of assent, as the weight of testimony inclined either way. The

court also instructed the jury, that the ordinary legal interest was a sufficient consideration for an agreement to delay the payment of the note.

The jury returned a verdict for the defendant, and the plaintiff moved to set the same aside, for misdirection in the matters aforesaid.

*Young*, for the plaintiff. There was no consideration for the agreement for extension. The case finds that the consideration was merely the simple interest. *Bayley on Bills* 359, *cites Philpot* vs. *Briant*, 4 *Bing*. 417. It is a promise to pay what he is bound in duty and law to pay. There must be a consideration for such an agreement. 12 *Wheat.* 554, *McLemore* vs. *Powell* ; *Theobald on Prin. and Surety* 112, *sec.* 213, *and cases cited ;* 1 *M. & P. Dig.* 754.

The receipt for $106 is of itself a promise to pay. A surety has a right to the benefit of all collateral securities. 1 *Story's Eq.* 480, § 502. If the surety has any security, the creditor is entitled to the benefit of it.

The fact that a surety takes security for the amount of the debt, renews his obligation. He became principal by receiving the security. By accepting property to account generally on all liabilities where he was bound, he recognizes the debt. This was all done with knowledge.

A contract to extend the time is not in all cases a discharge of the surety. 1 *Brockenbrough's Rep.* 220, *Garrett* vs. *Mason ;* 2 *Ditto* 275, *U. S.* vs. *Cochran.*

*C. R. Morrison*, for the defendant. A promise to keep money for a definite time, and pay interest, may be a benefit to the one party, or damage to the other. It is a benefit to the creditor to have it out for a definite time. 1 *Metcalf* 84, *Hubbard* vs. *Coolidge ;* 6 *N. H. Rep.* 504, *Wheat* vs. *Kendall ; Ditto* 19, *McQuesten* vs. *Noyes.*

It is assumed on the other side, that the receipt was given with knowledge of the discharge. The case does not find this.

All the facts were left to the jury, and they were told they might find a new promise or not. They found none.

But a decisive answer to this, is, that he was absolutely discharged before. No case is to be found showing that after discharge a surety is held by taking security. 4 *Pick.* 59, *D'Wolf* vs. *Chapin;* 10 *Pick.* 128, *Blackstone Bank* vs. *Hill;* 6 *Wend.* 658, *Jones* vs. *Savage.*

After his discharge he held these effects as the agent of Fay, not being liable on the note. 13 *Johns.* 315, *Thorne* vs. *Peck.*

A surety cannot be held after discharge, except by a promise with full knowledge of the facts.

*Wells,* on the same side. The verdict establishes three facts. 1. That Fay is principal. 2. That by an agreement between Kimball and Fay the time was extended. 3. That Brooks had no knowledge of the extension, did not assent, and did not promise afterwards.

The note was originally payable January 1, 1837.

The receipt of the property cannot be conclusive evidence to charge the defendant. It was prudent to take it for security. It is the same in principle as if Fay had given Brooks $106 to pay to Kimball, and afterwards countermanded it. He received the amount to guard against the contingency of a suit only. It was taken to be applied where he was legally liable.

If the creditor had any right to the property in the hands of the surety, that does not give him a right of action on the note, after the surety was discharged.

The declarations of Brooks were circumstances to show him liable,—to show he was not discharged,—and they were all left to the jury.

*Hibbard,* in reply. Courts have gone a great way in discharging sureties, and the propriety of some of the decisions may be questionable.

Fowler *v.* Brooks.

The taking of the property after the extension, and after his knowledge of it, bound him. He is presumed to know the legal consequences of his acts. This should have been left to the jury, as evidence from which they were to find a new promise. The defendant said he should be obliged to pay the note. No other meaning can be attached to it, except that there was a new contract to pay, and the jury should have been so charged. We believe there are authorities that if a surety, after knowledge of his discharge, promises to pay, that is sufficient, without any new consideration.

Having the property of the principal in his hands is a sufficient consideration.

Parker, C. J. The defendant Brooks being only a surety, was discharged by an agreement to delay, made between the creditor and the principal, without his assent at the time. This appears from the verdict. Or, in other words, he might avail himself of this fact as a discharge of himself, if he saw fit so to do. But if, with a knowledge of the fact, he had deemed it expedient to waive this right, a new promise to pay would have continued his liability, without any new consideration. The right of discharge, in such case, from the mere fact of the extension of time, is a personal privilege of the surety, which he may waive ; and he does so, emphatically, if, with knowledge of the fact, he notwithstanding renews his promise.

But the fact that the surety takes security from the principal, to indemnify him against his liability on the note, without any communication with the creditor, is not a renewal of his promise. It is perfectly consistent with a determination to avail himself of his right to a discharge. It may well be but a wise precaution against the contingency that he may not be able to substantiate his claim to be exonerated from the payment of the debt.

Nor can the declarations of the defendant in this case to third persons, that he " expected to pay the note," or that he

"should be obliged to pay it," or "might have to pay it," operate of themselves as a new promise. They were evidence to be submitted to the jury, having a tendency to show that the defendant had waived his right of discharge by a new promise, or by assent to the delay; but they neither took the shape of a promise, nor were they conclusive evidence of one, or of assent. They might have been made under a mere mistake of his rights; and if this appeared, their tendency to show that the defendant had made a promise, or had assented to the delay, would, to a considerable extent at least, be rebutted. They were left to the jury, along with the rest of the evidence, and they have found that there was neither assent nor promise.

It is not necessary, in order to a binding contract for delay, that there should be a contract to pay usurious interest. The ordinary legal interest, which will be received upon a note payable with interest, provided the payment be delayed, is a sufficient consideration for a contract to delay, if a binding agreement be made for delay which secures to the creditor the interest during the term.

An application, however, for delay for a term, by the principal, and a mere declaration by the creditor that the matter may rest, or that he will not insist on immediate payment, or any other similar declaration, even specifying a time, does not constitute a binding agreement for delay. Notwithstanding a transaction of that character, the debtor may pay at any day afterwards that he pleases. And the creditor may collect, notwithstanding such an assent or agreement. The fact that he will receive interest if he does delay, because the terms of the previous contract provide for it, does not constitute an agreement to pay the interest for any particular time, and does not alone, therefore, constitute a consideration for an agreement to give time. It is no more than what would take place if the matter had rested without any conversation respecting it. But an agreement that the creditor will delay the collection for six months, or any other

Fowler *v.* Brooks.

term, in consideration of which the debtor agrees that he will pay the interest for that period, is of a different character. After such an agreement, the debtor's hands are tied, and he cannot pay, and thus stop the interest. He must pay it. And so the creditor is bound by the agreement, and cannot collect the debt until the period expires. 6 *N. H. Rep.* 504, 508, *Wheat* vs. *Kendall;* 10 *N. H. Rep.* 162, *Bailey* vs. *Adams.* So if he agree with a person who is not a party to the note, but who is the real debtor, to give delay, with an understanding that he is to pay interest. 6 *N. H. Rep.* 21, *McQuesten* vs. *Noyes.*

The instructions to the jury were correct, and there must be

*Judgment on the verdict.*